ESTHER J. HAYES v. J. W. AND J. T. WRENN.

(Filed 11 November, 1911.)

Estates — Leases—Tenants—Remaindermen—Rents—Interpretation of Statutes.

The common law relating to the crops of a tenant growing upon lands, at the termination of the life estate of his lessor, withholding from the remainderman his part of the rent for the land during the current crop year, and accruing after the life estate has fallen in, has been changed by statute, Revisal, sec. 1990, the effect of which is to extend the lease for the current crop year, upon the consideration of the payment of rent; and where the rent under the contract of lease is for a certain fixed sum of money, the remainderman is entitled only to his proportionate part of that sum, according to the period of payment elapsing after the termination of the life estate of the lessor.

APPEAL by plaintiff from *Lyon, J.,* at May Term, 1914, of GRANVILLE.

This is an action to recover rent. The plaintiff's grandmother owned a tract of 365 acres of land in Vance County. By her will the grandmother left the property to plaintiff, subject to the life estate of Mrs. Callie Hayes (or Clayton), mother of plaintiff. The life tenant died 18 May, 1913, and the property passed to plaintiff.

In 1912 the life tenant rented the place to defendants for five years from 1 November, 1912, for $500. This rent was paid in advance by the Wrenns. They then sublet to their codefendants, the Dickersons. These subtenants paid rent of about $500 for the place in 1912. In 1913 they raised a crop on the place worth $3,250. Out of this they paid guano bills of $312.45 and paid one-fourth of the balance to the Wrenns.

In the fall of 1913 plaintiff returned to this State from Dallas, and at her request a guardian was appointed for her. He demanded possession of the place from the Wrenns, together with 227/365 of the actual rent received for that year. Both demands were refused by defendants until January, 1914, when possession of the place was relinquished by them, but division of the rent was still refused. Thereupon this action was instituted, the guardian contending that he is entitled to 227/365 of the rent actually paid, and the defendant that he is only entitled to recover a proportionate part of $100, the rent for the year reserved by the lease.

His Honor charged the jury that plaintiff was bound by the contract entered into by her mother; that the remainderman was entitled to a part of the rent for the rental year in proportion to the time that elapsed after the death of the life tenant as compared with the time that elapsed before her death, and therefore that if the jury should find that the lease introduced in evidence was executed by Mrs. California Hayes (or Clayton), then they should answer the issue "Yes," and allow plaintiff a proportional part of the $100 agreed upon between defendants Wrenn and the life tenant for the year from 1 November, 1912, to 1 November, 1913. Plaintiff excepted.

Under the instructions of the court the jury answered the issue "Yes; $45.50," and from the judgment rendered thereon the plaintiff appealed.

*John A. Hester and D. G. Brummitt for plaintiff.*
*T. T. Hicks for defendant.*

ALLEN, J. Under the common law, "the tenant for life, or his representative, shall not be prejudiced by any sudden determination of his estate because such a determination is contingent and uncertain. Therefore, if a tenant for his own life sows the lands, and dies before harvest, his executor shall have the *emblements* or profits of the crop, for the estate was determined by the act of God, and it is a maxim in the law that *actus dei nemini facit injuriam*. The representatiyes, therefore, of the tenant for life shall have the emblements to compensate for the labor and expense for tilling, manuring, and sowing the lands, and also for the encouragement of husbandry, which being a public benefit, tending to the increase and plenty of provisions, ought to have the utmost security and privilege the law can give it." 2 Bl. Com., 122; Taylor on L. and T., 355; *Gee v. Young,* 1 Hay, 17; *Poindexter v. Blackburn,* 36 N. C., 286.

"A tenant of lands for an uncertain term, such as a tenant for life or at will, is entitled by way of emblements to the annual production of his annual labor, although his estate may have been terminated by the act of God or of the law before he shall have harvested the same. Where the tenant for life makes a lease for years, and dies before the expiration of the term, the undertenant or tenant for years is likewise entitled to emblements." 24 Cyc., 1070-1.

The General Assembly of this State, having in mind these principles and considering the injustice to the remainderman of withholding from him the part of the rent for his land accruing after the life estate had fallen in, enacted the statute which is now section 1990 of the Revisal, which reads as follows: "Where any lease for years of any land let for farming on which a rent is reserved shall determine during a current year of the tenancy by the happening of any uncertain event determining the estate of the lessor, the tenant, in lieu of emblements, shall continue his occupation to the end of such current year, and shall then give up such possession to the succeeding owner of the land, and shall pay to such succeeding owner a part of the rent accrued since the past payment became due, proportionate to the part of the period of payment elapsing after the termination of the estate of the lessor to the giving up of such possession."

Before this statute was passed the remainderman would have received no part of the rents in controversy, and his right now is, therefore, dependent upon the construction of the statute, which was considered in *King v. Foscue,* 91 N. C., 116, in which it was held that it was its plain purpose to extend the lease for the current year to the extent of occupancy upon the part of the tenant until the end of the lease year current at the time of the death that terminated it.

The lease is not valid except as supported by the consideration to pay rent, and if the lease is extended, it would seem to follow that it was only upon condition that the rent reserved shall continue, and that it alone should be paid. The language of the statute is that the tenant shall pay to the succeeding owner a part of the rent accrued since the last payment became due proportionate to the part of the period of payment elapsing after the termination of the estate of the lessor. No rent has accrued except under the terms of the lease.

If the construction contended for by the plaintiff could be maintained, it would render it difficult for a life tenant to make a contract of lease, as the tenant would be subject to the danger of paying rent under the lease for a part of the year, and if the lease was terminated by death, he could be held responsible for a higher and different rent by the remainderman.

We are, therefore, of opinion that the ruling of his Honor was correct. There is no allegation in the complaint demanding payment of rent for the time the land was occupied by the tenant after 1 November, 1912, the end of the current year under the lease, until its surrender by the defendants—a period of about two months.