TRUST COMPANY OF GEORGIA, executor, *v.* KENNY *et al.*

No. 12804. JUNE 15, 1939.

*Tye, Thomson & Tye* and *Arnold, Gambrell & Arnold,* for plaintiff in error. *Mitchell & Mitchell,* contra.

BELL, Justice. The question for decision in this case is whether, upon the death of a life-tenant on March 21, 1936, taxes for that year should be apportioned as between the remaindermen and the executor of the life-tenant, or whether as between such parties the entire amount is chargeable against the life-estate. John J. Lynch died in 1923, leaving a will in which he bequeathed to his wife, Mrs. Hannah M. Lynch, for life, described real estate in the City of Atlanta, with remainder to relatives designated. Mrs. Hannah M. Lynch, the life-tenant, died on March 21, 1936, leaving a will in which the Trust Company of Georgia was named as executor. Before her death Mrs. Lynch, by an agent, returned the property for taxation to the county tax-receiver and to the municipal authorities for the year 1936. After her death her executor paid to the proper county and city officers certain sums representing a ratio of the taxes for the part of the year preceding her death. Executions were later issued against the executor by the county and city tax-collectors respectively, for the remainder of the taxes for the year 1936. James J. Kenny and others, as remaindermen, paid the sums demanded by these executions, and thereafter filed the present suit against the executor to recover the sums paid, each of the plaintiffs suing "severally for his respective part of said debt." The suit was filed as a petition in equity, for the purpose of establishing a common right in favor of several against one, and avoiding a multiplicity of actions. As to equitable jurisdiction, contrast *Dobbs* v. *Federal Deposit Insurance Corporation,* 187 *Ga.* 569 (1 S. E. 2d, 672). A general demurrer to the petition was overruled, and the executor excepted. The arguments were devoted mainly to the question whether the taxes were apportionable, the executor contending that they were, and the remaindermen asserting the contrary. Being of the opinion that a proper decision of this question will control the entire case, we shall make no decision upon the subordinate questions mentioned in the briefs.

It is pertinent at the outset to refer to several sections of the Code relating to the rights and liabilities of life-tenants. "The tenant for life shall be entitled to the full use and enjoyment of the property if in such use he exercises the ordinary care of a prudent man for its preservation and protection, and commits no acts tending to the permanent injury of the person entitled in remainder or reversion." § 85-604. "If the life-estate shall be

terminated by the act of one other than the tenant, he and his legal representatives shall be entitled to emblements, which are the profits of the crop sowed by him during life, whether the plants are annual or perennial." § 85-606. In *Thornton* v. *Burch,* 20 *Ga.* 791, it was held that the death of a life-tenant terminated the life-estate within the meaning of this law. "If the tenant for life rents the land for the year, and the life-estate is terminated during the year by his death or otherwise, the tenant shall be entitled to the land for the term of the year, upon complying with his contract with the tenant for life." § 85-607. "Taxes shall be charged against the owner of property if known, and against the specific property itself if the owner is not known. Life-tenants, and those who own and enjoy the property, shall be chargeable with the taxes thereon. Hence, while the public may treat property as belonging either to the maker or the holder of a bond for title when the latter is in possession, yet as between the parties the one receiving the rents or enjoying the use shall be liable for the taxes." § 92-110.

The lien for state and county taxes for the year 1936 accrued against the property embraced in this life-estate on January 1 of that year. Code, §§ 92-5708, 92-6201, 92-6202. The petition showed that under an ordinance of the City of Atlanta the lien for municipal taxes arose at the same time. None of the taxes were mature for payment, however, until a date succeeding that of the life-tenant's death. It is contended by counsel for the remaindermen that since the life-tenant was alive on January 1, 1936, the day the lien accrued, the taxes for the entire year became a fixed charge against her estate and are not apportionable as between her estate and the remaindermen, notwithstanding she died before the end of the year and before the date for payment as fixed by law. It is true that so long as the life-tenant lived and enjoyed the property she was liable for the taxes, as between her and the remaindermen. It is also true that it was within the power of the State to tax the specific property, and to subject the entire estate to the tax lien under an assessment and execution in rem against the property. *Hight* v. *Fleming,* 74 *Ga.* 592; *Burns* v. *Lewis,* 86 *Ga.* 591 (5) (13 S. E. 123); *Roddenberry* v. *Simpson,* 171 *Ga.* 715 (156 S. E. 583, 75 A. L. R. 414); *Beaton* v. *Ware County,* 171 *Ga.* 798 (2) (156 S. E. 672); *Kirk* v. *Bray,* 181 *Ga.* 814 (184 S. E. 733). In the instant case, however, the life-tenant did not live to enjoy the

property for the entire taxable year; and considering this and the other facts of the case, it would seem to be only just and equitable that as between her estate and the remaindermen a ratable portion of the taxes should be charged to such remaindermen. Code, § 37-110. The taxes for the year 1936 did not represent a public duty referable to the life-estate only, but involved a duty relating to the entire estate, including the remainder interest. Payment of the whole therefore would have exonerated both estates for the year, and would not have been a payment for the life-estate alone. It follows that if the taxes can not be apportioned, the estate of the life-tenant must be held liable to the remaindermen for payment of taxes upon their property for a period during which, by reason of her death, they and not she were entitled to its possession and income. This could only result in granting an advantage to the remaindermen at the expense of the estate of the deceased life-tenant, which in our opinion could not be justified upon any principle of equity, or warranted by any rule of law in this State.

It should be remembered that the case does not concern any right of the taxing authorities, but that the controversy is solely between private individuals with respect to an apportionment, after all the taxes have been paid. Nor are we dealing with a case in which farm property is involved. The petition shows on its face that the property consisted only of buildings in the City of Atlanta, and that there could be no "emblements." In case of farm property, where the life-tenant dies during the taxable year and the other facts are such as to entitle the legal representative to emblements, it may be that the taxes should ordinarily be charged in whole to the life-estate, as between that estate and the remaindermen; and whatever might be the rule if the property was of a different character and if the life-tenant collected the income in advance for the entire year, the petition in the present case does not show that any rent or income was collected in advance, or that such income, if any, did not inure immediately to the remaindermen upon the death of the life-tenant. The petition as filed by the remaindermen, being silent as to these matters, must be construed most strongly against them, and be taken to mean that whatever income the property may have produced was received by the remaindermen for the portion of the year following the death of the life-tenant.

There are two decisions by the Court of Appeals of this State which appear to shed light upon the question here under consideration. In *Story* v. *Butt, 2 Ga. App.* 119 (58 S. E. 388), it was held that § 3092 of the Code of 1895 (Code of 1933, § 85-606), relating to the right of a tenant for life to emblements, is merely declaratory of the common law, but that § 3093 of the Code of 1895 (§ 85-607), relating to the rights of an under-tenant who has rented from the life-tenant for the year, is not of common-law origin, but is an adaptation of an English statute passed in 1851. It was further held in that case that where the life-tenant rented the life-estate for a year, and the under-tenant paid the rent to the life-tenant before the latter's death, such under-tenant could not be forced to pay again to the remainderman. The same case was again before the Court of Appeals in *Butt* v. *Story, 5 Ga. App.* 540 (63 S. E. 658), where it was held: "If the life-tenant rents out the land for the year and dies without collecting the rent, and without doing anything to which the law would give the effect of a collection of it, the under-tenant is entitled to possess the premises to the end of the year, but he is accountable to the remainderman for such a proportion of the rent agreed to be paid as the period between the death of the life-tenant and the end of the year bears to the whole year." The facts of that case, as they finally appeared, were that the under-tenant gave a non-negotiable note for the year's rent to the life-tenant. The life-tenant died in February, after having transferred the rent note to a third person, to whom the under-tenant paid the note in the fall of the year. Notwithstanding the note was made payable to *the life-tenant* and was later paid in the hands of a transferee, it was held that the under-tenant was "accountable to the remainderman for such a proportion of the rent agreed to be paid as the period between the death of the life-tenant and the end of the year bears to the whole year." Whether or not that decision, followed in *Mitchell* v. *Rutherford, 9 Ga. App.* 722 (72 S. E. 302), accords with *King* v. *Whittle, 73 Ga.* 482, both cases referring to farm property, still, under the allegations contained in the instant petition, no reason appears why the rule of apportionment stated in the *Butt* case would not be applicable to the income, if any, arising from the city property embraced in this life-estate. On the general subject see: 17 R. C. L. 629, § 19; 21 C. J. 946, §§ 82-85; Jones *v.* Shuf-

flin, 45 W. Va. 729 (31 S. E. 975, 72 Am. St. R. 848) ; Pierce v. Fulmer, 165 Ala. 344 (51 So. 728) ; Carman v. Mosier, 105 Iowa 367 (75 N. W. 323) ; Collins v. Crownover (Tenn.), 57 S. W. 357; Hayes v. Wrenn, 167 N. C. 229 (83 S. E. 356) ; Henry v. Stevens, 108 Ind. 281 (9 N. E. 356) ; May v. Thomas, 94 S. C. 158 (78 S. E. 85). If the rents were thus apportionable in favor of the remaindermen, why should not the taxes be apportioned in like manner in favor of the estate of the life-tenant?

It seems that no case involving the identical question as to apportionment of taxes has ever before been considered by this court. Counsel for the remaindermen rely upon several decisions by this court which they insist are controlling; but we can not so construe them. *Dean* v. *Feely,* 69 *Ga.* 804, does not seem to touch the question. In *Austell* v. *Swann,* 74 *Ga.* 278, a widow holding a dower sought to have the annual taxes apportioned between her and the reversioners, although she had lived to use and enjoy the property for the entire year. This was not a case in which the life-tenant died during the year, and it did not involve the present question. In *McCook* v. *Harp,* 81 *Ga.* 229 (5) (7 S. E. 174), it was held that "Taxes are chargeable to the tenant for life if they accrued while she lived and was entitled to the income." As shown in that decision, the life-tenant died on May 10, 1882. An examination of the record of file reveals, however, that there was no effort to prorate the taxes for the year 1882 according to the periods preceding and following the death of the life-tenant, or otherwise. In the opinion it was said that if any tax had been paid on the corpus by the trustee *since the death of the life-tenant,* such payment would have been proper matter for allowance. There was no ruling to the effect that an apportionment should not be had in a case like the present. No such question appears to have been raised. In *Hamilton* v. *Kinnebrew,* 161 *Ga.* 495 (4) (131 S. E. 470), it was held in effect that a life-tenant who was still living and had paid the taxes was not entitled to an apportionment or contribution from the remaindermen. The facts were greatly different from those now before us. In *Bristol Savings Bank* v. *Nixon,* 169 *Ga.* 282 (150 S. E. 148), the life-tenant died during the taxable year, but the life-estate consisted of farm lands, and the administrator representing the estate of the life-tenant was entitled to emblements. The decision was evidently based upon the fact that

the administrator was entitled to that portion of the crop which was planted before the death of the life-tenant; and it was accordingly held that the life-estate was chargeable with the taxes for the entire year. The decision contains nothing which should prevent an apportionment in the present case.

Counsel for the defendants in error, the remaindermen, further rely upon the provisions of the Code, § 92-110, supra, that "life-tenants and those who own and enjoy the property shall be chargeable with the taxes thereon," and that "as between the parties the one receiving the rents or enjoying the use shall be liable for the taxes." These provisions of the law, so far as they relate to the rights and liabilities of individuals, clearly do not contemplate the death of the life-tenant during a given taxable year, but refer only to living life-tenants; so there is nothing in this section to sustain the contention of the defendants in error in the instant case.

There is a conflict of authority in other jurisdictions; and it is insisted for the defendants in error that we should follow the decisions of other courts to the effect that the taxes are not apportionable. For decisions pro and con on this question, see annotations in 17 A. L. R. 1398, and in 94 A. L. R. 320, as appended to the reports of Rothschild v. Weinthel, 191 Ind. 85 (131 N. E. 917, 17 A. L. R. 1377), and Thayer v. Shorey, 287 Mass. 76 (191 N. E. 435, 94 A. L. R. 307). The weight of authority is apparently against apportionment, but it seems to us that the minority view is more compatible with the principles of equity. Among the courts adhering to the former doctrine are those of Kentucky and Massachusetts; on the other side are courts of New York and Pennsylvania, though not courts of last resort. In re Schulze, 133 Misc. 168 (231 N. Y. Supp. 677), where the death of the life-tenant occurred on April 15, after a city tax had become a lien for the current year, it was said: "Upon the death of a life-tenant mid the course of a fiscal period, there is a manifest equity in apportioning both the burdens and the benefits. . . I have been unable to find any common-law rule against the apportionment, at the termination by death, of the burdens then incident to a life-estate, as between the life-tenant and the remainderman. Wherever our courts have found the remainderman unjustly receiving a definite advantage at the expense of the deceased life-tenant, they have sustained the equity of an apportionment or

rebate; at least, they have always done so in cases of taxes for permanent improvements; and have never, in so far as I know, clearly refused to do so in the case of assessments for 'current fiscal needs. . . In the absence, therefore, of any binding precedent in this State, this court feels free to follow the ruling which makes the equities of the matter decisive, especially in view of the liberality of this testator's intention." According to copy of a decision attached to the defendant's brief, the same view was recently taken by the Circuit Court of Baltimore City (Md.) in the case of Safe Deposit & Trust Co. v. White, decided January 13, 1939 (not reported), wherein the court remarked that "The quantum of precedent is one way; the quality the other." There is no analogy between the present case and one in which property has been sold by owners after a lien for taxes has attached. Cf. *Baker* v. *Smith,* 135 *Ga.* 628 (4) (70 S. E. 239).

It is our opinion that the taxes here in question were apportionable as between the estate of the life-tenant and the remaindermen, and that the suit as brought against the executor of the estate by the remaindermen did not state a cause of action. For this reason, the court erred in not sustaining the general demurrer and dismissing the petition. In this view, we do not consider any question as to whether the payments made by the plaintiffs were voluntary, and for this reason not recoverable. Nor do we make any ruling, either express or implied, as to whether an action in personam was an available remedy, or as to whether the proper remedy would have been a transfer and levy of the executions, even if liability had been otherwise shown. See *State* v. *Western & Atlantic R. Co.,* 136 *Ga.* 619 (2) (71 S. E. 1055); *Georgia Power Co.* v. *Decatur,* 179 *Ga.* 471 (176 S. E. 494); s. c. 181 *Ga.* 187 (182 S. E. 32). *Judgment reversed. All the Justices concur.*